1

2

3

4

5

6                           **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

9    RICKEY TODD MAJOR,                    )
                                           )
10              Petitioner,                )         3:99-cv-00237-LRH-RAM
                                           )
11   vs.                                   )         ORDER
                                           )
12   E.K. McDANIEL, *et al.*,              )
                                           )
13              Respondents.               )
     _____ /

14

15          This is an action on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

16   Before the court is the amended petition, respondents' answer and petitioner's reply.  Dockets #14,

17   #83 and #90.

18          **I.      Procedural History**

19                 The procedural history of petitioner's criminal and appellate proceedings is extensive,

20   covering a period of ten years from the date of the crime in April or May of 1988 to September 10,

21   1990, when charges were originally filed, to 1996, when the conviction was obtained, to completion

22   of direct appeal on September 3, 1998.  Post-conviction proceedings have proceeded in and out of

23   state and federal court from November 1998 through the present.

24                 A. <u>First Elko County Murder Prosecution - Case No. 5159</u>

25                 Petitioner was originally charged with open murder with the use of a deadly weapon

26   for the killing of Tina Dell, in Elko County, Nevada on September 10, 1990.  Exhibit 1.[1]  Petitioner

27   _____

28          [1] The exhibits referenced in this Order were filed by petitioner in support of his amended petition
     and are found in the clerk's record at dockets 18-30 and 49-59.

raised questions of venue arguing that the proper venue was in Eureka County where the body of the deceased was found.  Exhibits 8.  Upon stipulation, petitioner was committed to Lakes Crossing, a state-run mental health facility located in Reno, Nevada, for a competency evaluation. Exhibit 21. Petitioner was found competent (Exhibits 29 and 31).  On February 13, 1992, after a hearing and special canvass of petitioner by the court, the parties stipulated to the dismissal of the charges without prejudice on the basis that new evidence had come to light.  Exhibits 87, 88 and 89. Petitioner specifically waived any statute of limitations for re-filing charges against him.

B.      Eureka County Murder Prosecution - Case No. 875

In February, 1994, the Eureka County District Attorney (DA) filed open murder with the use of a deadly weapon charges against petitioner in the killing of Tina Dell.  Exhibit 95. Following a preliminary hearing, petitioner was bound over to the district court on the charges. Exhibits 96-97.  Petitioner filed a motion for change of venue, arguing that there was insufficient evidence that the crime occurred in Eureka County.  Exhibit 99.  He also moved to dismiss the charges contending that the issue of venue had been previously litigated.  Exhibit 102.   On September 16, 1994, following a hearing on these and various other motions, the court issued an order dismissing the action without prejudice because there was no evidence that the "fatal blow" or death of Tina Dell occurred in Eureka County.  Exhibit 109.  An appeal of this order was ultimately withdrawn by the DA.  Exhibits 110, 113 and 114.

C.      Erueka County Perjury Prosecution - Case No. 876

Meanwhile, on April 22, 1994, petitioner was charged with perjury based on an affidavit signed and attested to by petitioner that he had no history of mental health problems. Exhibit 115.  Following a jury trial, petitioner was convicted (Exhibit 144) and sentenced to four years in prison.  Exhibit 151.  This conviction was reversed on appeal in 1998.  Exhibit 164.

D.      Elko County Murder Prosecution - Case No. 6218

In February 1995, the Elko County DA again filed charges against petitioner of open murder with the use of a deadly weapon for the 1988 killing of Tina Dell.  Exhibit 165.  The petitioner was bound over.  Exhibit 176.  Petitioner was represented by Matthew Stermitz.  *Id.*

2

1  Petitioner pled not guilty on the Information filed against him in the Fourth Judicial District Court on
2  the charge of open murder.  Exhibit 178.

3         A five-day jury trial commenced on March 11, 1996.  Exhibits 192-197.  Petitioner
4  was found guilty of first degree murder with the use of a deadly weapon on March 15, 1996.  Exhibit
5  199.  The state pursued a habitual criminal enhancement. Exhibit 200.  The court sentenced
6  petitioner to two consecutive sentences of life without the possibility of parole.  Exhibit 206.

7         E.      State Appeal

8         Petitioner filed a direct appeal raising nine claims of error.  Exhibit 208.  While the
9  appeal was pending, with the representation of a new attorney, petitioner moved for a new trial,
10 claiming that he had just discovered that his trial counsel, Mr. Stermitz, had a conflict of interest
11 arising from his employment by the district attorney's office when the murder charges were initially
12 filed against petitioner in 1990 and because Stermitz had promised to re-open the Dell murder file
13 during an unsuccessful election campaign. Exhibit 218.  The motion for a new trial was denied and
14 petitioner appealed.  Exhibits 224, 225.  The appealed was dismissed, with the Nevada Supreme
15 Court concluding that no actual conflict of interest existed and that counsel's representation of
16 appellant had not been deficient.  Exhibit 238.

17        Petitioner's direct appeal of his conviction was dismissed on September 3, 1998, with
18 the Nevada Supreme Court concluding that none of petitioner's claims were meritorious.  Exhibit
19 233.

20        F.      Post-Conviction Review

21        Petitioner filed a petition for writ of habeas corpus (post-conviction) in the state
22 district court of White Pine County on November 13, 1998.  Exhibit 241.  Because it was filed in the
23 wrong county, the matter was transferred to Elko County.  Exhibit 242.  Before the state court had
24 addressed the state petition, petitioner initiated his federal action by filing a petition for writ of
25 habeas corpus pursuant to 28 U.S.C. § 2254.  Docket #1.  The federal petition was filed April 27,
26 1999,  raising five grounds for relief.  *Id.*  On petitioner's motion, counsel was appointed and an
27 amended petition was filed raising nineteen grounds for relief. Docket #14.

28

1    On respondents' motion to dismiss for lack of exhaustion and petitioner's motion to

2 stay pending state court exhaustion, the court determined that grounds 5, 10, 11-14, and 16-19 were

3 unexhausted. Docket #42. Petitioner agreed to have the federal petition dismissed without prejudice

4 to allow him to return to state court to exhaust his claims.

5    Petitioner returned to state court and filed an amended post-conviction habeas petition

6 on November 13, 1998, raising the same nineteen grounds raised in his amended federal habeas

7 petition. Exhibit 241.  Counsel was appointed to represent petitioner.  Exhibit 257.  Because the

8 amended petition was not verified, it was dismissed.  Exhibit 261.  In the court's amended order

9 dismissing the amended petition, it noted the original petition, filed in November 1998, was still

10 viable.

11    Counsel filed supplemental points and authorities in support of the state post-

12 conviction petition, raising two additional claims.  Exhibit 268. On respondents' motion, the state

13 court dismissed petitioner's claim that he received an illegal sentence when the court and not the jury

14 imposed sentence.  Exhibits 277 and 281.  A hearing on the remainder of the petition was conducted

15 on December 5, 2003.  Exhibit 282.  On December 20, 2003, the court denied the petition,

16 addressing and deciding all claims raised in the original petition, the amended petition, and the

17 supplemental points and authorities of counsel.  Exhibit 302.  Petitioner appealed in case number

18 45012.  Exhibit 306.

19    On January 8, 2004, petitioner filed a motion to modify an illegal sentence, claiming

20 he was entitled under Nevada law to be sentenced by the jury that convicted him and that the DA and

21 the court had both relied upon the perjury conviction, which was later overturned, in arguing and

22 deciding the sentence.  Exhibit 284.  This motion was granted and a new sentencing hearing was

23 ordered.  Exhibit 287.  Ultimately, petitioner waived his right to be sentenced by a jury and allowed

24 the judge (one who had not presided over the trial) to impose sentence.  Exhibits 298 and 299.

25 Resentencing was conducted on February 16, 2005.  Exhibit 304.  The judge imposed a sentence of

26 two consecutive life sentences without the possibility of parole.  *Id.*  Petitioner appealed in case

27 number 45427.  Exhibit 310.

28                                                         4

On July 5, 2006, the Nevada Supreme Court affirmed petitioner's new sentence. Exhibit 316. On October 19, 2006, the Nevada Supreme Court affirmed the denial of petitioner's post-conviction petition. Exhibit 318. Thereafter, petitioner moved to reopen his federal habeas action, which motion was granted.

Respondents moved to dismiss the amended petition on exhaustion and procedural default grounds. The motion was granted in part and denied in part, with the court finding that grounds 16 and 17(n) were moot and dismissed them. The court also found that grounds 5, 10-12, and 14 were procedurally defaulted, but noted that the petitioner might be able to make a showing of cause and prejudice through consideration of the merits of his ineffective assistance of appellate counsel claims, reserving that determination until after full briefing on the merits.

Respondents have now filed their answer and petitioner his reply.

**II.      Discussion**

The court previously found that grounds 5, 10, 11, 12, and 14 of the amended petition were procedurally defaulted. Respondents renew their argument that ground 13 of the amended petition is also defaulted, admitting a typographical error omitted reference to ground 13 from the heading and initial lines of their argument, but pointing to the multiple references to ground 13 in the remainder of that section. *See* Motion to Dismiss (docket #66), p. 23 at lines 10-11 and p. 24, line 25. Petitioner offers no objection to this contention and, having reviewed the motion to dismiss as referenced, the court finds that the affirmative defense of procedural bar was addressed as to ground 13 and has not been waived. *See Morrison v. Mahoney,* 399 F.3d 1042, 1046-47 (9th Cir. 1999); *Windham v. Merkel,* 163 F.3d 1092, 1100 (9th Cir. 1998). The court will apply the argument for procedural default, and its finding of the same, to ground 13.

In his reply, petitioner responds as to each claim for relief, incorporating his cause and prejudice arguments within the relevant discussions.

A.      Procedural Default

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts but the state courts disposed of the claim on procedural grounds, rather than on the

merits.   A federal court will not review a claim for habeas corpus relief if the state court's decision rested on a state law ground that is independent of the federal question and if the ground is adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

The *Coleman* Court stated the effect of a procedural default, as follows:

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To demonstrate cause to overcome a procedural default, the petitioner must be able to "show that some *objective factor external to the defense* impeded" his efforts to comply with the state procedural rule.  *Murray*, 477 U.S. at 488 (emphasis added).  For cause to exist, the external impediment must have prevented the petitioner from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural default.  *Murray*, 477 U.S. at 488.  However, for ineffective assistance of counsel to satisfy the cause requirement, the independent claim of ineffective assistance of counsel must first be presented to the state courts.  *Id.* at 488-89.  In addition, the independent ineffective assistance of counsel claim cannot serve as cause if that claim is also procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

In order to show prejudice to overcome procedural default, petitioner bears the burden

> . . . of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension.

*White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982).  If the petitioner fails to show cause, the court need not consider whether the petitioner suffered actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d

6

1    528, 530 n.3 (9th Cir. 1988).

2           The court having found a procedural default as to grounds 5, and 10-14, petitioner

3    must demonstrate cause for the default and prejudice in order to obtain a review of his defaulted

4    claims on the merits.  Failure to make a sufficient showing will bar the court from considering his

5    defaulted claims.  *Murray*, 477 U.S. at 488.

6           Petitioner argued in opposition to the motion to dismiss that his procedural default

7    should be excused because his trial and appellate counsel had been ineffective, citing "generally" to

8    claims 17 and 18 of the amended petition.  Opposition to Motion to Dismiss (docket #69), p. 9.  As

9    respondents point out in their answer, the claim of ineffective assistance of trial counsel raised as

10   ground 17 offers nothing to excuse petitioner's failure to bring the procedurally defaulted claims

11   before the Nevada Supreme Court in their proper procedural context.  All the defaulted claims were

12   denied by the state high court on the basis that they were waived when petitioner failed to present

13   them on direct appeal.  Exhibit 318, p. 2, n.3.  Because the claims should rightfully have been raised

14   on direct appeal, it is the performance of appellate counsel that is called into question.  Only ground

15   18 presents a claim of ineffective assistance of appellate counsel. That claim contends that counsel

16   should have raised the now defaulted claims and argues that failure to do so was ineffective

17   assistance.  *See* Amended Petition (docket # 14), pp. 38-39.

18          In order to determine if petitioner can overcome the procedural bar, the court must

19   examine the merits of ground 18.  Ground 18 states:

20          Petitioner's Conviction and Sentence Are Invalid under the Constitutional
             Guarantees of Due Process of Law, Equal Protection of the Laws, Effective
21          Assistance of Counsel and a Reliable Sentence Because Petitioner Was Not
             Afforded Effective Assistance of Counsel on Appeal.  U.S. Const. Amends. VI,
22          VIII & XIV.

23          1.    Petitioner was represented on direct appeal to the Nevada
             Supreme Court by Matthew Stermitz.  The experience of counsel and the
24          available resources and time to prepare the briefing was inadequate to permit
             reasonably effective assistance to be provided on appeal.
25
             2.    Appellate counsel failed to provide reasonably effective
26          assistance of counsel to petitioner.  Appellate counsel unreasonably failed to
             raise on appeal or completely assert all the available arguments supporting the
27          constitutional issues asserted in this petition as grounds one (Right to Conflict-

28
                                                7

Free Counsel), five (Unqualified State Expert), ten (Reasonable Doubt Jury Instruction), eleven (Premeditation and Deliberation & Malice Jury Instructions), twelve (Prosecutorial Misconduct), thirteen (Prejudicial Trial Atmosphere-Change of Venue), fourteen (Voluntary and Knowing Waiver of Major's Right Against Self-Incrimination), and sixteen (Denial of Penalty Hearing and Sentencing by Jury).

   3. Appellate counsel did not have any tactical or strategic reasons within the range of reasonable competence for failing to assert available constitutional claims or otherwise performing reasonably in perfecting the record on appeal.   Counsel failed to perform with reasonable competence due to the limitations on resources and time available to counsel and not for the purpose of gaining a tactical or strategic benefit.

   5.[Sic] The failure of appellate counsel to render effective assistance was prejudicial in that it is reasonably probable that a more favorable result would have been obtained on appeal if counsel had performed effectively and the failure of appellate counsel to provide reasonably effective assistance was substantially injurious to the petitioner's right to obtain fundamentally fair and adequate appellate review of petitioner's conviction and sentence because the claims which should have been raised are meritorious and they could not have been found harmless beyond a reasonable doubt on direct appeal.

Docket # 14, p. 38.

   In considering the merits of a claim presented in the amended petition this court is bound by the provisions of 28 U.S.C. § 2254(d), which provides:

   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

   (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

   Ineffective assistance of appellate counsel, if proved, constitutes cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-92 (1985) (examining ineffective assistance of counsel resulting in procedural default in state court). To establish prejudice based on the deficient assistance of appellate counsel, the defendant must show that the omitted issues would have a

8

reasonable probability of success on appeal.  *Morrison v. Estelle*, 981 F.2d 425, 427-28 (9th

Cir.1992), *cert.* denied 508 U.S. 920 (1993); *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir.1992);

*Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991).

The Nevada Supreme Court reviewed petitioner's claim of ineffective assistance of

appellate counsel on appeal from denial of his post-conviction petition.  Exhibit 318.  In that order

the court stated the proper federal standard for review, citing to *Strickland v. Washington,* 466 U.S.

668 (1964) and *Jones v. Barnes,* 463 U.S. 745, 751 (1983)(Appellate counsel is not required to raise

every non-frivolous issue on appeal.)  Exhibit 318, p. 4, n. 7; p. 18, n. 23.  Additionally, the court

reviewed the claims that petitioner argued his appellate counsel should have brought on appeal in the

context of his ineffective assistance of trial counsel claims and determined that those claims "did not

have a reasonable likelihood of success on appeal."  *Id.,* p. 18.  If, as the Nevada Supreme Court

concluded, the claims had no reasonable likelihood of success on appeal, petitioner cannot

demonstrate the level of prejudice required on a claim of ineffective assistance of counsel enunciated

in *Strickland*, at 687-92, and it follows, therefore, that he cannot meet the higher standard of showing

"actual prejudice" required under *United States v. Frady,* 456 U.S. 152, 1665-168 (1982)(holding

that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle

that would exist on direct appeal.)

The Nevada Supreme Court rejected the claim of ineffective assistance of appellate

counsel holding:

> Major also claims the district court erred in rejecting Major's claim that appellate
> counsel was ineffective. [fn 22, Major was originally represented during his direct
> appeal by Matthew Stermitz; David Houston substituted in as counsel of record on
> January 29, 1997.] To state a claim of ineffective assistance of appellate counsel,
> a petitioner must demonstrate that counsel's performance was deficient in that it
> fell below an objective standard of reasonableness, and resulting prejudice such
> that the omitted issue would have a reasonable probability of success on appeal.
> [fn 23, *Kirksey v. State,* 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996) (citing
> *Strickland,* 446 U.S. 668).]  Appellate counsel is not required to raise every non-
> frivolous issue on appeal. [fn 24, *Jones v. Barnes,* 463 U.S. 745, 751 (1983).] This
> court has held that appellate counsel will be most effective when every
> conceivable issue is not raised on appeal. [fn 25, *Ford v. State,* 105 Nev. 850, 853,
> 783 P.2d 951, 953 (1989).]

Major claims Stermitz should have argued (a) trial counsel's conflict of interest

9

(b) Dr. Brooks' qualifications to serve as an expert witness, (c) reasonable doubt instruction, (d) premeditation and deliberation and malice jury instructions, (e) prosecutorial misconduct, (f) change of venue, (g) *Miranda* violations, and (h) denial of sentencing by jury. As stated above, we conclude issues (a)-(g) did not have a reasonable likelihood of success on appeal and (h) was rendered moot by Major's successful motion to correct illegal sentence, which led to his resentencing in 2005. Thus, the district court did not err in concluding that Major failed to demonstrate that Stermitz's appellate representation fell below an objective standard of reasonableness or omitted any issues on appeal that would have had a reasonable probability of success.

Exhibit 318, 651-652.[2]

As discussed infra, petitioner has not demonstrated that the state court's rejection of this claim was either contrary to clearly established federal law or an unreasonable application of that law. 28 U.S.C. § 2254(d)(1). Neither has he shown that the state court made an unreasonable determination of the facts in light of the evidence at trial. *Id.* Because the state court's decision as to the effectiveness of appellate counsel was proper under § 2254(d)(2), this court is bound by that decision and petitioner has not met his burden to show cause and prejudice to obtain review of the procedurally barred claims.

Grounds 5 and 10-14 are procedurally barred from review by this court and shall be dismissed with prejudice.

B.    Merits Review

The remaining grounds for relief are eligible for a review on the merits. Those claims include grounds 1-4, 6-9, 15, 17(a)-(m), 17(o)-(r), 18 and 19. As previously noted, the court's review of the merits of petitioner's claims is governed by the provisions of the AEDPA[3] as codified at 28 U.S.C. § 2254.

Ground One.   Major's Right to Conflict Free Counsel as Guaranteed by the United States Constitution Was Violated When Matthew Stermitz Was Appointed to Represent Major at Trial. U.S. Const. Amend. VI.

---

[2] The Nevada Supreme Court considered and rejected the individual claims omitted from appeal, including the present grounds 5 and 10-14, in the context of ineffective assistance of counsel at trial claims. Exhibit 318, pp. 5-8, 12-15.

[3] Antiterrorism and Effective Death Penalty Act of 1996.

10

1       In support of this claim, petitioner reports that Stermitz had just run for election to the

2   office of Elko County District Attorney prior to being appointed to represent petitioner in the 1995-

3   96 murder prosecution against him.  During the election campaign, Stermitz was said to have

4   "indicated he would review the case" of the Tina Dell murder charges if he was elected.[4]  He was not

5   elected and returned to private practice, and later was appointed to represent petitioner in defense of

6   the murder charge.

7       Petitioner further reports that his prior counsel, David Lockie, had been disqualified

8   on the basis that his law partner had been a deputy district attorney at the time of the original

9   prosecution in Elko.  Petitioner argues that this same circumstance–Stermitz's employment as a

10  deputy district attorney at the time of the first Elko murder prosecution–should have disqualified

11  Stermitz from representing him.  Petitioner argues that because he was living in Colorado during the

12  election campaign, he was unaware of these facts.  However, he suggests that the court, the

13  prosecutor and other officials involved in the proceedings would have been aware of this obvious

14  conflict.  Petitioner contends that these facts evidence the actual conflict of interest that his counsel

15  suffered and that this conflict denied him his right to counsel as guaranteed by the Sixth Amendment.

16  He further argues this actual conflict requires no showing of prejudice.

17      The Sixth Amendment provides that a criminal defendant shall have the right to "the

18  Assistance of Counsel for his defense . . . because of the effect it has on the ability of the accused to

19  receive a fair trial."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Where a constitutional right

20  to counsel exists, there is a correlative right to representation that is free from conflicts of interest.

21  *See, e.g., Cuyler v. Sullivan,* 446 U.S. 335 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978).

22  And, while as a general matter, a petitioner alleging a Sixth Amendment violation must demonstrate

23  "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

24  would have been different," *Strickland*, 466 U.S. at  694, in the case where a petitioner's counsel had

25

26      [4] The quoted language was extracted from the Motion for New Trial, p. 4, where it is cited as a
    quote from a newspaper article appearing in the High Desert Advocate on March 13, 1996.  Exhibit 229.
27  The actual quote is significantly different than as reported by petitioner.

28                                        11

an actual conflict of interest, the petitioner must show only that the conflict "actually affected the adequacy of his representation." *Cuyler*, 446 U.S. at 349-50.[5]  In determining whether there has been an actual affect on the representation, petitioner must show that counsel failed to pursue some "plausible alternative defense strategy or tactic," *United States v. Wells,* 394 F.3d 725, 733 (9th Cir. 2005),  "that counsel was influenced in his basic strategic decisions" by the conflict, *United States v. Shwayder,* 312 F.3d 1109, 1118 (9th Cir. 2002), or that counsel would be required to undermine, criticize, or attack his own work product from a previous case, *Maiden v. Bunnell,* 35 F.3d 477, 480 - 481 (9th Cir. 1994).

During his testimony at the state post-conviction hearing, counsel was questioned about potential alternate defense strategies.  Stermitz confirmed  that petitioner's defense was innocence and that he believed arguing for a second degree murder conviction would have been completely inconsistent with that strategy.  Exhibit 282, pp. 62.  Stermitz further testified that he did not believe petitioner would have "authorized" this alternate argument and he did not want to weaken the innocence claim by making any concessions as to guilt.  *Id.,* pp. 63-64.  When asked why he did not argue the lack of evidence of deliberation or premeditation required for first degree murder, counsel testified that the murder weapon was a knife and that the use of a knife was evidence of deliberation, stating, "You use a knife, you stab, what the hell were you trying to do? Tickle them?"  *Id.* p. 62.  These statements offer no support for the argument that counsel shaped his defense strategy for any purpose except for the benefit of his client.  Strategic decisions made by counsel on the basis of the client's instructions and the evidence available do not demonstrate a conflict of interest that had an actual affect on the adequacy of the representation.  Petitioner has not demonstrated that counsel suffered from a conflict of interest based upon his statements made during an election campaign.

---

[5] In *Mickens v. Taylor,* 535 U.S. 162 (2002), the Supreme Court noted that its holding in *Cuyler v. Sullivan*, was limited to the situation of joint representation. *Id.,* at 176. Whether the *Cuyler* exception to the prejudice requirement of *Strickland* should apply in other situations of attorney conflict remains an open question.  *Id.*

1    Petitioner next argues that because counsel was employed by the district attorney's

2  office just prior to the time the original charges were filed, the representation was "substantially

3  related" to the current representation and should have required disqualification, citing *Trone v.*

4  *Smith*, 621 F.2d 994, 998 (9th Cir. 1980).  In *Trone* the court held that if there was a possibility that

5  confidential information was disclosed in the previous representation that could harm the client in

6  the present representation, then a substantial relationship is presumed.  *Id.*  In this case the potential

7  harm fell only to the prosecution if confidential information was obtained by Stermitz  while he was

8  employed as a deputy district attorney.  It is impossible to imagine how information that Stermitz

9  might have obtained in preparing the case for prosecution could have been of harm to the defendant.

10  More likely it would have been used, if at all, for his benefit.

11    The Nevada Supreme Court clearly reviewed this contention in post-conviction

12  review and concluded no such conflict existed.  Exhibit 238, pp. 1-2.  Petitioner has not shown that

13  the state court's decision was improper under 28 U.S.C. § 2254(d) and no relief is warranted on

14  ground one.

15  Ground Two:  Major Was Denied His Right to Due Process and a Fair Trial When His Jury Was
          Prejudiced by a Juror Whose Co-worker Remarked That the Prosecution Had
16          Possession of "The Knife."  U.S. Const. Amends. VI & XIV.

17    Petitioner asserts in this claim that on the fourth day of trial a seated juror asked to

18  speak with the court.  In a meeting with all parties present, the juror informed the court that a fellow

19  employee had discussed the case with her.  She said the co-worker told her that the co-worker's

20  mother's friend found a knife and found out it was "the knife" used in Dell's murder.  The juror was

21  also told that the woman had used the knife and had gotten rid of it.  Exhibit 196, pp.3-5.[6]  Despite

22  counsel's repeated objection to the juror remaining on the jury, the court extracted a promise from

23  the juror to disregard the statement and to not allow it to bear any weight in her deliberations.  *Id.*

24    Private communications, possibly prejudicial, between jurors and third persons, or

25

26    [6] In fact, the juror said: "The girl that I work with happens to live out at Paradise Valley, and she
   said, 'Well, my mother has a friend who has a friend that found the knife and they found out it was
27  the knife and it was the best damned knife they used and they got rid of it.' "  Exhibit 196, p. 3-4.

28                                         13

witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear. *Mattox v. U. S.,* 146 U.S. 140, 150 (1892); *See also, Remmer v. U.S.* 347 U.S. 227, 229  (1954) (prejudice is presumed where there is any private  communication between a juror and an outside party on matters related to the trial while the matter is pending.)  This presumption of prejudice can be overcome if, at a hearing with notice to all parties, the state makes a strong showing that there was no harm to the defendant. *Id.*

As the petitioner acknowledges, the court, after receiving a note from the juror, conducted a hearing involving the juror, the prosecutor, defense counsel.  Exhibit 196, pp. 2-7.  The court questioned the juror and then allowed both parties to question the juror.  Defense counsel then moved to have the juror removed stating:

> It's such an integral part of the case, yeah, in spite of what's been said – and I don't know that the juror – but in spite of what's been said, I think it's such an integral part of the case whether or not that really happened and, yeah, we would object.

Exhibit 196, p.6.  The court denied the motion, having obtained the juror's assurance that she would not consider the co-worker's statement for any purpose and that the information would not have any weight in her deliberations. *Id.* at 7.

Petitioner has not shown the trial court's decision was improper.  The nature of the hearing indicates the court's immediate concern for the events and his careful consideration of what the juror had to say.  Moreover, the circumstances, together with the juror's testimony, showed that the juror intended to act appropriately and honestly with the court.  She brought the matter to the judge's attention.  She answered honestly when asked what was said.  She indicated she had advised the co-worker she was not to talk about the trial and had exited the room.  She further stated that she doubted the credibility of the co-worker.

When the Nevada Supreme Court considered the claim, it found it had no merit, that the trial court had acted in conformance with *Isbell v. State,* 97 Nev. 222, 626 P.2d 1274 (1981) and had made the proper factual determination that the communication was not prejudicial as required by *Remmer, v. United States,* 347, 227 (1954)*.*  Exhibit 233, pp. 7-8.  The court found that the trial court's determination to retain the juror was supported by substantial evidence. *Id.*

1    Petitioner has not demonstrated that the Nevada Supreme Court's decision was an

2  unreasonable determination of facts in light of the evidence in the record.  Moreover, the court

3  correctly applied the applicable federal law.  Petitioner is not entitled to relief on this claim.

4  <u>Ground Three:</u>    Major Was Deprived of His Rights to Due Process and a Fair Trial When the
                           Prosecution Failed to Disclose Evidence Regarding the Finding of Knives.
5                          U.S. Const. Amends. VI & XIV.

6    Petitioner offers these facts to support this claim: Petitioner requested the opportunity

7  to review all discoverable materials.  During trial, a prosecution witness testified that she found a

8  knife in the same area where the bones had been found and that she turned the knife over to police.

9  Exhibit 192, pp. 42-43.  Petitioner had not been advised of these events and, although the witness

10  had testified on three prior occasions, she had never before mentioned the knife.  Exhibits 11, 96 and

11  175.  Another witness also testified that there were knives missing from petitioner's household after

12  Ms. Dell's disappearance.

13    Based on the assumption that no knife had been found, defense counsel made an

14  opening statement highlighting that fact.  Petitioner argues that the subsequent testimony to the

15  contrary was very damaging to petitioner's case.  Petitioner had based his defense on the state being

16  unable to prove that Ms. Dell's death was caused by criminal agency.  Petitioner further argues that

17  the court should have declared a mistrial following the witnesses testimony about finding the knife.

18  Petitioner acknowledges, however, that the DA claimed that the testimony was a complete surprise

19  to him.  Petitioner argues that the state is responsible for the suppression of the knife evidence and

20  that because the evidence was not provided to petitioner prior to trial, the court should have granted a

21  mistrial.  He further argues that denial of the motion for mistrial denied due process and a fair trial.

22    Under *Brady v. Maryland,* 373 U.S. 83 (1963), the state is obligated to provide a

23  criminal defendant with exculpatory evidence.  To show a violation of this rule, petitioner must

24  demonstrate that the prosecution suppressed evidence that was favorable or exculpatory and that the

25  evidence was material.  *Id.,* at 87; *see also United States v. Blasco,* 702 F.2d 1315, 1327 (11th Cir.

26  1983).  Here, the evidence petitioner claims was suppressed was not exculpatory evidence.  Rather, if

27  the knife had been found and turned over to police as the witness testified, and, if the knife proved to

28                                    15

1   be related to the killing, it would have been incriminating evidence, otherwise it would likely have

2   been irrelevant to the prosecution or defense.  However, apart from the unanticipated testimony of

3   Ms. Brockett, the witness who reported finding the knife and turning it over to the police, no

4   evidence of the knife was presented at trial.  In fact, the police officer to whom the knife was

5   reportedly submitted denied ever receiving it.  Exhibit 194,  pp. 145, 151.

6          The Nevada Supreme Court considered this claim on direct appeal from the judgment

7   of conviction citing to *Brady* and concluded that petitioner had failed to show that the knife was ever

8   in the prosecution's possession, and that, even if it was, petitioner had failed to show the evidence

9   was exculpatory.  Exhibit 233.  The Nevada Supreme Court's determination of this claim was not

10  incorrect or unreasonable within the parameters of 28 U.S.C. § 2254(d) and no relief shall be granted

11  on ground three.

12  Ground Four:  Major's Conviction and the Resulting Sentence Is Invalid under the Constitutional
              Guarantees of Due Process and a Fair Trial Due to the Absence of Evidence
13            Sufficient to Support, Beyond a Reasonable Doubt, a Factual Basis for the Necessary
              Elements of Criminal Agency for Culpability for the Offense.  U.S. Const. Amends.
14            VI, XIV.

15         Petitioner claims there was insufficient evidence presented at trial to prove beyond a

16  reasonable doubt that Ms. Dell died by a specific criminal agency or that petitioner was the person

17  responsible for her death.  He contends the condition of the remains and the conditions under which

18  they existed until their discovery required a "qualified forensic anthropologist['s]" examination, and

19  that Dr. Brooks, the expert used at trial, was not qualified.  Petitioner argues the only evidence at

20  trial of the criminal agency causing death came in through Dr. Brooks, suggesting that evidence

21  given via testimony of witnesses who saw a photograph of the victim lying on a bed with stab

22  wounds to her chest and apparently dead (Exhibit 194, pp. 29-30), together with statements made by

23  the petitioner himself to those testifying witnesses about the same photograph (Exhibit 194, pp. 51,

24  60; 134-145), does not qualify as evidence of the criminal agency causing death.  Petitioner also

25  ignores testimonial reference to the report prepared by Dr. Birkby, which also identified perimortem

26  injuries to the skeletal remains as evidence suggesting that "knife wounds inflicted elsewhere on the

27  body" could be the cause of death.  Exhibit 247.

28

Respondents argue that this claim does not present a federal question because the issue of *corpus delicti* is a question of state law. Respondents are mistaken. Questions of the sufficiency of the evidence implicate federal due process and fair trial guarantees. In determining claims of insufficient evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-319 (1979).

In considering this claim, the Nevada Supreme Court found the claim to be without merit, pointing to the testimony of the state's expert about the stab wounds as the eventual, if not immediate cause of death and noting the role of the jury in determining the weight and credibility to be given to witness testimony. Exhibit 233. Viewing all the evidence in a light most favorable to the prosecution, this court cannot conclude that *no* rational trier of facts could have found the essential element of criminal agency in the death of Tina Dell. The Nevada court's rejection of the claim is not an unreasonable determination of facts in light of the evidence. Ground four shall be denied.

<u>Ground Five</u>:   Major's Conviction and Sentence Are Invalid under the Federal Constitutional Guarantees of Due Process, Equal Protection, Trial Before an Impartial Jury and a Reliable Sentence Because the Testimony of the Unqualified State Expert Witness Was Not Reliable and Her Conclusions Were Not Based on Approved Methods That Could Be Tested by Other Experts in Her Field. U.S. Const. Amends. V, VI, VIII & XIV.

This ground is procedurally defaulted.

<u>Ground Six</u>:   Major's Conviction and Sentence Are Invalid under the Federal Constitutional Guarantees of Due Process and a Fair Trial Because the Court Refused to Admit The Results of Major's Polygraph Test. U.S. Const. Amends. VI & XIV.

Petitioner claims the results of his polygraph should have been admitted at trial. Petitioner contends that because he signed a broad release at the time of his polygraph examination that provided for its dissemination to "any and all persons involved in the investigation and/or prosecution of the above case, my lawyer, the courts when deemed appropriate by competent judicial authority and my parents or legal guardian if I am under 18 years of age" there was a stipulation for its admission. Exhibit 212, pp. 14-16. Petitioner argues the document is a contract with the state,

17

which thus implicates petitioner's due process rights.[7]  Petitioner further represents that the report of the polygraph test administered by an employee of the Nevada Division of Investigation, indicates his truthfulness in denying that he killed or stabbed Tina Dell.  Petitioner contends he has a constitutional right to present this exculpatory evidence and argues it was the only way he could rebut the allegations of the prosecution that had relied upon petitioner's statements to police as evidence of his guilt.

A defendant's right to present relevant evidence is subject to reasonable restrictions to accommodate other legitimate interests in the criminal trial process. *U.S. v. Scheffer,* 523 U.S. 303, 303 (1998).  Such reasonable restrictions include the exclusion of unreliable evidence such as polygraph tests.  *Id.* at 309.  Generally, the question of the admissibility of evidence is a question of state law.  *Lisenba v. California,* 314 U.S. 219, 228 (1941).  Under Nevada law, polygraph evidence can be considered reliable if properly administered by a qualified expert who can then be subjected to cross-examination on the testing and its results.  *Corbett v. State,* 94 Nev. 643, 584 P.2d 704 (1978).  The Nevada Supreme Court considered this claim and rejected it, finding that the polygraph test was reasonably excluded because petitioner had not presented evidence to supports the test's reliability, such as the qualification of the examiner or the quality of the testing procedures.  Exhibit 233.

The Nevada Supreme Court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.  Neither was it an unreasonable determination of the facts.  No relief is warranted on this claim.

Ground Seven:          Major's Conviction and Sentence Are Invalid under the Federal Constitutional Guarantees of Due Process and a Fair Trial Because the Court Refused to Allow the Defense's Proposed Jury Instructions.  U.S. Const. Amends. VI & XIV.

Petitioner complains that the trial court rejected three proposed jury instructions: (1) Proposed Instruction "A" advising the jury that it could find petitioner guilty of manslaughter if they

---

[7] The document referenced by petitioner is not provided in the record.  There is no indication that it was signed by any agent of the state so as to make it binding upon the state in terms of contract law.

1   had reasonable doubt whether the crime was murder or manslaughter; (2) Proposed Instruction "B"

2   defining the concept of proximate cause of death as "a cause which, in natural and continuous

3   sequence, produced the death, and without which the death would not have occurred;" and (3)

4   Proposed Instruction "C"which set forth the defense of voluntary intoxication.

5           Petitioner notes the instructions were denied because the court believed them to be

6   covered by other instructions, a point petitioner disputes. Petitioner further argues that the court's

7   instructions were not a correct statement of the law, did not contain the instruction sought or denied

8   petitioner an instruction on his theory of defense.

9           To prevail on this claim, the petitioner must demonstrate that the erroneous

10  instructions were so prejudicial that they "support a collateral attack on the constitutional validity of

11  a state court's judgment." *Henderson v. Kibbe*  431 U.S. 145, 154 (1977). This burden is greater

12  than that required to establish plain error on direct appeal.  *Id.*  The question for this court is

13  "whether the ailing instructions by themselves so infected the entire trial that the resulting conviction

14  violates due process." *Id.* quoting *Cupp v. Naughten*, 414 U.S.141, 147 (1973).

15          Petitioner's Proposed Instruction A stated:

16          If you are satisfied beyond a reasonable doubt that the killing was unlawful, but
            you have a reasonable doubt whether the crime is murder or manslaughter, you
17          must give the defendant the benefit of the doubt and find it to be manslaughter.

18   Exhibit 249.

19          The instruction offered to the jury by the court, which otherwise covered the subject,

20  provides:

21              If you believe from the evidence beyond a reasonable doubt that the
            Defendant is guilty of Murder, and there is in your minds a reasonable doubt as to
22          which of the two degrees he is guilty, he must be convicted of the lower of such
            degrees which is Murder of the Second Degree.
                Should you find that the Defendant did not commit Murder of either the
23          First or Second degree but believe beyond a reasonable doubt that he is
24          responsible for the homicide, you must determine if that killing was manslaughter.

25   Exhibit 198, Jury Instruction 12.   Petitioner relies on  *Crawford v. State,* 121 Nev. 744, 121 P. 3d

26  582 (2005) to argue that the court was required to give his proffered instruction to remind the jury

27  that it cannot convict the defendant if proof of a particular elements of the crime is lacking, because,

28                                              19

1    "[j]urors should neither be expected to be legal experts nor make legal inferences with respect to the

2    meaning of the law." *Id.* at 753-754, 121 P.3d at 588.  In *Crawford,* the defendant had introduced

3    evidence to support a defense of voluntary manslaughter and the trial court denied a specific

4    instruction that the burden is on the state to prove that the defendant did not act in the heat of passion

5    with the requisite legal provocation.  *Id.* at 754, 121 P.3d at 589.

6            Here, the jury was instructed properly and the proposed instruction offered nothing

7    that could not be taken from the instruction that was given. Petitioner has not met his burden to show

8    this instruction infected the entire trial that his conviction violates due process. *Henderson v. Kibbe,*

9    431 U.S. at 154.

10           Next, petitioner argues the court improperly denied his instruction on proximate

11   cause. The Involuntary Manslaughter instruction given to jurors reads:

12           Involuntary Manslaughter is the killing of a human being, without any
     intent to do so, in the commission of an unlawful act or a lawful act which
13   probably might produce such a consequence in an unlawful manner; but where the
     involuntary killing occurs in the commission of an unlawful act, which, in its
14   consequences, naturally tends to destroy the life of a human being, or is
     committed in the prosecution of a felonious intent, the offense is Murder.
15
     Exhibit 198, Jury Instruction 14.  Proposed Instruction B instructed the jury that
16
     To constitute [murder] [or] [manslaughter] there must be, in addition to the death
17   of a human being, an unlawful act which was a proximate cause of that death.  A
     proximate cause of a death is a cause which, in natural and continual sequence,
18   produces the death, and without which the death would not have occurred.

19   Exhibit 249. Although the proposed instruction defines proximate cause concisely, petitioner has not

20   shown that the instruction given fails to inform the jury of the elements and circumstances necessary

21   to a finding of involuntary manslaughter.

22           As to Proposed Instruction "C," petitioner argues his constitutional rights were

23   violated when the court refused to give a jury instruction on his theory of defense - voluntary

24   intoxication.  Petitioner's instruction reads:

25           If you find that a defendant, while unconscious as a result of voluntary
     intoxication, killed another human being without intent to kill and without malice
26   aforethought, the crime is involuntary manslaughter.
             When a person voluntarily induces his own intoxication to the point of
27   unconsciousness, he assumes the risk that while unconscious he will commit acts

28                                              20

1    inherently dangerous to human life or safety.  Under such circumstances, the law
2    implies criminal negligence.

3    Exhibit 249.

4         Instead, the trial court offered Jury Instruction no. 16.  Exhibit 198.  The Nevada

5    Supreme Court determined that his instruction was an inaccurate statement of Nevada law.  NRS

6    193.220 outlines when voluntary intoxication can be considered in determining criminal liability.

7    The statute provides:

8         No act committed by a person while in a state of voluntary intoxication shall be
      deemed less criminal by reason of his condition, but whenever the actual existence
9         of any particular purpose, motive, or intent is a necessary element to constitute a
      particular species or degree of crime, the fact of his intoxication may be taken into
10        consideration in determining the purpose, motive or intent.

11   This was the exact language set forth in Jury Instruction no. 16.  Thus, petitioner's proposed

12   instruction was correctly rejected by the trial court.  The Nevada Supreme Court's consideration and

13   rejection of ground seven was appropriate within the parameters of 28 U.S.C. §2254(d) and cannot

14   be revisited by this court.

15
16   Ground Eight:          Major's Sentence Is Invalid Under the Federal Constitutional Guarantees of
                 Due Process, Equal Protection, and a Reliable Sentence Because the Court
                 Abused its Discretion in Sentencing Him to a Term of Two Life Sentences
17               Without Parole.  U.S. Const. Amends. V, VI & VIII.

18        This ground for relief is moot and has been abandoned by petitioner (docket #90, p.

19   30).

20   Ground Nine:           Major's Conviction and Sentence Are Invalid under the Federal Constitutional
                 Guarantees of Due Process, a Fair Trial and the Right to Testify in His Own
21               Defense Because the Court Failed to Advise Him of His Right to Testify at
                 Trial.  U.S. Const. Amends. V, VI, & VIII.
22

23        Neither party cites to any United States Supreme Court case law which outlines a

24   criminal defendant's right to be advised by the court of his right to testify or not at his criminal trial.

25   Respondents contend that the issue is an open question and that this forecloses any relief for

26   petitioner under 28 U.S.C. § 2254.

27        Petitioner relies on *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) to support his

28                                              21

1   argument that the waiver of a constitutional right must be shown on the record to have been knowing

2   and competently made and that it is the court's responsibility to ensure the waiver is proper.  *In*

3   *Johnson v. Zerbst,* the petitioner was convicted and sentenced without counsel and without a record

4   that he knowingly and intelligently waived the right to have counsel.  *Id.*  A different issue is

5   presented here.

6           While the Fifth Amendment clearly provides that a defendant cannot be compelled to

7   testify in his own defense, that is not petitioner's claim.  Petitioner was not forced to testify.  Rather,

8   he complains that the court did not inform him that he could testify.  He does not complain that he

9   did not know he could testify.  Such a complaint would be disingenuous at the least, as he was fully

10  canvassed by the court and did testify at his trial on a charge of perjury.  *See* Exhibit 145, pp. 269-

11  330.

12          No United States Supreme Court precedent exists upon which petitioner can rightly

13  rely to overcome the decision of the Nevada Supreme Court.  As noted in its order dismissing appeal,

14  in *Phillips v. State,* 105 Nev. 631, 782 P. 2d 381 (1989), Nevada declined to adopt any affirmative

15  requirement that the court canvass a criminal defendant on his right to testify.   Thus, petitioner has

16  not demonstrated that his federal constitutional rights have been violated and no relief is warranted

17  on ground nine of this amended petition.

18  Grounds Ten-Fourteen:        These grounds were procedurally defaulted in state court.

19  Ground Fifteen:        Petitioner's Rights to Equal Protection, Due Process and a Fair Trial Were
                           Violated When the State Was Allowed to Participate in the Ex Parte
20                         Application for an Investigator and Expert Fees.

21          Petitioner complains that his ex parte application for fees for an investigator was

22  improperly published to the State which then participated in the hearing on his application.

23  Respondents point out that the application for fees referenced by petitioner, exhibit 181, was not

24  labeled as "ex parte" and was served on the state by petitioner. *Id.*   Moreover, according to the

25  appellate briefs (Exhibits 215 and 302), neither the application itself, or the matters revealed at the

26  hearing in the presence of the prosecutor revealed any work product or confidential defense strategies

27

28                                              22

1   or discoveries.[8]

2          The record reveals that petitioner sought and received funds to employ an investigator

3   and other experts.  The motion in question on this claim was not filed ex parte and included a

4   certificate of service on the prosecutor.  Moreover, by petitioner's own words, at the hearing, the

5   state was excused from the hearing after entering its objection to the excess fees.  While petitioner

6   asserts he was forced to disclose information "that he may not have intended to introduce at trial, he

7   provides no specifics about what information was disclosed.  Neither party has directed the court to

8   federal law that applies to this claim.  Thus, the handling of it by the Nevada Supreme Court cannot

9   be said to be contrary to or an unreasonable application of clearly established federal law.  Petitioner

10  is not entitled to relief on ground fifteen.

11  <u>Ground Sixteen</u>:          This ground has been dismissed (docket # 73).

12  <u>Ground Seventeen</u>:     Major's Conviction and Sentence Are Invalid Because He Was Deprived of
                               His Constitutional Right to Effective Assistance of Counsel, Due Process of
13                             Law, Equal Protection of the Laws, Confrontation of Adverse Witnesses and a
                               Reliable Sentence Due to the Failure of Trial Counsel to Provide Reasonably
14                             Effective Assistance.  U.S. Const. Amends. VI, VI VIII & XIV

15          Petitioner argues his court-appointed counsel was ineffective during the  proceedings

16  due to a lack of adequate preparation, skill and experience.

17          "The right to counsel is the right to the effective assistance of counsel."  *McMann v.*

18  *Richardson*, 397 U.S. 759, 771 n.14 (1970).   In *Strickland v. Washington*, 466 U.S. 668 (1984), the

19  Court established the standards by which claims of ineffective counsel are to be measured

20  propounding a two prong test.  A  petitioner claiming ineffective assistance of counsel must

21  demonstrate (1) that the defense attorney's representation "fell below an objective standard of

22  reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that

23  "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

24  proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694.

25          Regarding the first prong, the Court expressly declined to articulate specific

26

27          [8] As respondents note, there is no transcript of the hearing on the motion for investigation fees
    included in the record.

28                                            23

1   guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty

2   to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to

3   communicate with the client over the course of the prosecution.  *Id.*

4           Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather

5   a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that

6   counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding

7   of ineffective assistance.  In order to satisfy *Strickland's* second prong, the defendant must show that

8   the attorney's sub-par performance prejudiced the defense.  *Id.* at 691-92.  The Court defined

9   reasonable probability as "a probability sufficient to undermine confidence in the outcome."  *Id.* at

10  694.  Bearing these standards in mind, the court reviews petitioner's claim of ineffective assistance

11  of counsel at trial.

12          Petitioner attributes the following alleged injuries to counsel's lack of preparation,

13  skill and experience:

14      *Petitioner's statements to police and admitted at trial.*

15      (a)     Counsel failed to investigate and present expert testimony about petitioner's
                physical and psychological condition and his obvious intoxication by drugs in
16              relation to the statements petitioner gave officials during the investigation of
                the offense.  Petitioner contends he had indications of significant drug abuse
17              which started at an early age.  Counsel's failure to suppress the statements
                under the Fifth Amendment was ineffective assistance of counsel.
18

19      (b)     Defense counsel unreasonably failed to take steps to prevent or minimize the
                harmful effects of the presentation to the jury of petitioner's statements to
20              police, which were the subject of extensive examination at trial.  Defense
                counsel must not have read or simply did not understand these statements.
21              Nor did defense counsel make reasonable objections to the testimony
                presented concerning these statements when the prosecutor repeatedly referred
22              to them during his closing arguments.  Had such steps been taken it is
                reasonably probable that a different result would have occurred at trial.

23      (r)     Defense counsel unreasonably failed to file a motion to suppress to exclude
                the interviews and statement petitioner made to law enforcement in the
24              absence of a voluntary, knowing and intelligent waiver of his constitutional
                rights.  These interviews and statements formed the basis for the state's
25              closing argument.  Had defense counsel filed the appropriate motions it is
                probable that petitioner would have received a more favorable verdict.
26

27          The state's investigation of the Tina Dell disappearance and murder continued for a

28                                                      24

period of approximately eight years, from 1988 until petitioner was finally tried and convicted in 1996. Petitioner spoke with investigators numerous times.  Petitioner's claim that counsel should have investigated and suppressed statements made by petitioner to police during the investigation is too broad and does not identify specifically what statements were made when or how the circumstances surrounding the statement would warrant their suppression.  Conclusory allegations not supported by a statement of specific facts do not warrant habeas corpus relief. *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995), *cert. denied*, 517 U.S. 1143 (1996).  Nothing in the petition or in petitioner's reply to the answer identifies the statements to which it refers or explains the circumstances under which they were given.  Rather, petitioner cites to the record to instances where the state made reference to the statement in arguing that they were incriminating.  Because the specifics about the statements are missing, this court need not grant relief. However, because the Nevada Supreme Court considered the claims, its decision and reasoning shall be considered.

Counsel has an obligation to conduct a thorough investigation.   *Williams v. Taylor,* 529 U.S. 362 (2000).  Counsel's judgment and decisions about the nature and extent of investigation are entitled to great deference and must be judged based on the information known at the time, rather than from the perspective of hindsight. *See Strickland*, 466 U.S. at 689.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

The Nevada Supreme Court applied the *Strickland* standard in its review of petitioner's ineffective assistance of counsel claims.  Exhibit 318, p. 4.  It also gave proper deference to the district court's findings of fact derived from the evidentiary hearing it conducted into these claims.  *Id.*  According to the Nevada Supreme Court and the transcripts of that hearing, the petitioner's statements were made voluntarily and were generally initiated with police by petitioner. Additionally, he was not in a custodial setting, having been interviewed in his home in Colorado with his wife present in the next room.  When he was interviewed in Elko, his attorney was present.

25

1    *Id.* at 5-6.  Counsel testified that he had no basis to move to suppress the statements and that arguing

2    that petitioner's drug abuse might have contributed to some of the statements he made was

3    inconsistent with the defense theory of innocence, making it a strategic decision.  Exhibit 282, pp.

4    93-101.  The state court rightly concluded that counsel was not ineffective in this regard.

5              *Jury voir dire, trial publicity and venue*

6              (c)    Trial counsel unreasonably failed to conduct adequate voir dire of the
                       prospective jurors on the effect of community pressure and publicity regarding
7                      petitioner's case.

8              (f)    Defense counsel unreasonably failed to move for a change of venue, despite
                       the highly prejudicial trial atmosphere.
9
              (q)    Defense counsel unreasonably failed to object to the prejudicial atmosphere in
10                     which the trial took place, and failed to file a motion to have the venue
                       changed to a less prejudicial location.
11

12            Petitioner argues that counsel should have brought out that pre-trial publicity had

13   negatively impacted the jury pool which made it impossible for petitioner to obtain a fair and

14   unbiased jury and a fair trial because of public sentiment against petitioner.  Petitioner further argues

15   that the "overwhelming" pre-trial publicity "in all probability" led many of the prospective jurors to

16   form the opinion that petitioner was guilty.  Reply, p. 52.   He suggests that counsel should have

17   questioned the potential jurors to bring out that their ability to consider all the possible verdicts was

18   impaired by the strength of community sentiment about the case.

19            While pretrial publicity alone can render a trial inherently unfair, to make a sufficient

20   showing that this occurred in petitioner's case, the publicity must have been recent, inflammatory

21   and accusatory so as to impair the jury's impartiality. *Murphy v. Florida,* 421 U.S. 794, 802 (1975);

22   *U.S. v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001).  Petitioner has not identified any juror that expressed

23   a prejudice or pre-determined bias in the case.  Neither has he identified what publicity, save

24   counsel's own election campaign statement of an intent to review the case, there was in the

25   community to taint the jury pool.

26            The criminal trial took place some eight years after the disappearance and death of the

27   victim.  Additionally, while in the first prosecution in 1991, the state suggested that the jury pool

28                                        26

exclude citizens of Carlin "because of the size of the community of Carlin and the nature of this case" (exhibit 70, p. 2.), counsel did not believe pre-trial publicity tainted the jury pool for the trial in 1996. Exhibit 282, pp. 100-201. The Nevada Supreme Court affirmed the district court's denial of relief on this claim noting that petitioner had failed to show that counsel's performance was deficient. Petitioner's arguments to this court are no more persuasive and do not warrant relief.

### Juror Out-of-Court Discussions

      (d)      Trial counsel failed to effectively examine a juror regarding whether that juror had discussed inadmissible and inflammatory information with other community members during the trial and whether or not she would impart that information to other jurors.

During trial, a juror informed the court of a communication she had with a co-worker. The court called the parties into chambers and interviewed the juror about what had occurred and allowed each party to question the juror to ensure that she could and would disregard what she had been told and that she would not allow the conversation to interfere with her ability to weigh the evidence at trial in making her determination. Exhibit 193. Petitioner now contends that his counsel failed to adequately question the juror about whether she would share the information with other jurors.

During the hearing, counsel questioned Juror Winder specifically as follows:

Q.     Will you consider that in your deliberations?

A.     No.

Q.     Why do you think you will not consider that?

A,     Because I haven't considered it so far. Only thing I can consider is what I have, the facts that I have now, what has been presented to me.

Q.     *Is that something you feel you will share with the other jurors*?

A.     No.

Q.     Do you believe this person, what this person said?

A.     With Rebecca, no. You never know what to believe or not to believe.

Q.     I have nothing further.

1    Exhibit 198, p. 5 (emphasis added.)  Thus, the claim is belied by the record.  Counsel did question

2    the juror about her plans to discuss the matter with other jurors.  Further, the court emphasized in the

3    juror's presence the importance of not considering the information and not sharing it with other

4    jurors.  *Id.* p. 7.  Petitioner cannot show that counsel failed as claimed and cannot show that he was

5    prejudiced.  As the Nevada Supreme Court noted, petitioner has not demonstrated that further

6    questioning of the juror would have had any impact to his benefit.  Exhibit 318, p. 8.  No relief is

7    warranted on this claim.

8                      *Reasonable Doubt, Malice Aforethought and Premeditation Jury Instructions*

9                 (e)      Trial counsel unreasonably failed to object to the court's instructions on
                           reasonable doubt, malice aforethought and premeditation, which petitioner
10                         argues are improper and unconstitutional.

11                (o)      Defense counsel unreasonably failed to object to the reasonable doubt
                           instruction given by the court which minimized the burden of the prosecution
12                         in proving petitioner's guilty beyond a reasonable doubt.   Defense counsel
                           unreasonably failed to object to the premeditation and deliberation and the
13                         malice instructions given during trial which minimized the state's burden of
                           proof.
14

15           Petitioner offers no specifics or legal analysis to support subparts (e) and (o) above,

16   although petitioner argues the merits of the instructions themselves in grounds ten and eleven of the

17   amended petition - grounds that were procedurally defaulted.  Respondents point out that the

18   reasonable doubt instruction is specified by statute, that the claim has been continually rejected by

19   the Nevada Supreme Court, and that the Ninth Circuit has upheld the instruction since its decision in

20   *Ramirez v. Hatcher,* 136 F.3d 1209, 1210-1211 (9th Cir. 1998), *cert denied*, 525 U.S. 067 (1998).

21   Respondents argue that petitioner's continued pursuit of this claim is not in good faith and is

22   frivolous.

23           The Nevada Supreme Court upheld denial of relief on these claims in the context of

24   his ineffective assistance of counsel claims on post-conviction review.  Petitioner has not

25   demonstrated that the decision was at odds with United States Supreme Court precedent as required

26   under 28 U.S.C. § 2254(d).

27

28                                                      28

1    *Expert Testimony*

2            (g)    Defense counsel unreasonably failed to voir dire Sheilagh Brooks as to her
               expert qualifications, or object to her certification as a forensic expert.
3

4            Petitioner argues that Dr. Brooks' credentials did not include one for forensic

5    anthropology, but that she was grandmothered into the field.  He contends counsel should have

6    questioned her expertise because she never explained why she was qualified as an expert and no

7    exploration of her academic research or writing on the subject was had.

8            Petitioner argues that had counsel properly attacked the credibility or conclusions of

9    the state's only witness on the issue of criminal agency, he could have obtained a better result.

10   According to petitioner, counsel was deficient for failing to raise questions about the number of

11   cases she had worked on in her career or in a year, particularly cases involving sharp force

12   implement cases on skeletal remains.

13           At trial, Dr. Brooks testified that she had received her bachelors, masters, and

14   doctorate degrees from the University of California in Berkley, and that her doctorate thesis had been

15   in the analysis and determination of age and sex in human skeleton remains, that she had been in the

16   Las Vegas area for over twenty years, having retired honorably from teaching at the University of

17   Nevada, Las Vegas.  Dr. Brooks's testimony was that she had been doing forensic anthropology for

18   several years before "we formed our division of the forensic academy" some twenty years previous.

19   Exhibit 193, p. 61.  Thus, the doctor had been practicing forensic anthropology several years before

20   there was a forensic  academy in place and she had been doing it for twenty years since.  *Id.*  This

21   testimony leaves little question as to her extensive experience in the field.

22           The Nevada Supreme Court considered this testimony and noted defense counsel's

23   subsequent voir dire about Dr. Brooks's expertise in concluding the cause of the injuries visible on

24   the skeletal remains as by something sharp, which received the doctor's response that she had only

25   done approximately five investigations into potential sharp force trauma on skeletal remains.  The

26   court concluded that the questioning at trial and petitioner's post-conviction efforts had not proven

27   that Dr. Brooks was actually unqualified to give expert testimony in forensic anthropology, and that

28                                                   29

1   he had not demonstrated that "further or earlier voir dire would have changed the outcome of the

2   trial." Exhibit 318, pp. 10-11.  Petitioner has not shown this conclusion was unreasonable.

3           (h)     Defense counsel unreasonably failed to call Dr.  Birkby, an expert in forensic
                    anthropology to testify even though he told the jury during his opening
4                   statement that he intended to present expert testimony in his defense case.

5           Petitioner argues that Dr. Birkby should have been called as promised during

6   counsel's opening statement because he "could have eliminated all but two of the injuries as possible

7   sharp instrument trauma and all but one instance of possible blunt force trauma," refuting many of

8   Dr. Brooks's points of interest, which she testified "could have been" sharp instrument trauma."

9   Amended Petition, p. 34.  Petitioner further asserts that Dr. Birkby's report opined that "none of the

10  observed sharp implement or knife marks *per se* would have led to an immediate death,...." *Id.*

11  Petitioner argues that counsel's performance in abandoning Dr. Birkby and any lesser included

12  offenses as a possible outcome in favor of the all or nothing approach of full innocence was

13  constitutionally ineffective.

14          Respondents note that petitioner's quote of Dr. Birkby's report is incomplete.  The

15  actual statement, as reported by the district court in its order denying post-conviction relief, was:

16  "While none of the observed sharp instrument or knife marks per se would have led to an immediate

17  death, it would be unreasonable to assume that the cause of death did not result from knife wounds

18  inflicted elsewhere on the body."  Exhibit 302, p. 10.

19          The Nevada Supreme Court considered the claim and decided as follows:

20          Seventh, Major claims the district court erred in rejecting the claim that Stermitz
            was ineffective for failing to call expert witnesses.  Specifically, Major argued
21          Stermitz should have called forensic anthropologist Dr. Walt Birkby, psychologist
            Frank Hadley (Major's brother), and a DNA expert.  The district court found that
22          Stermitz was not ineffective, as Stermitz testified at the evidentiary hearing that
            Dr. Birkby had told Stermitz that this testimony would not be helpful to the
23          defense.  Stermitz further testified that he believed Frank Hadley thought Major
            had killed Dell, and that expert DNA testimony would not be useful because the
24          blood found at the crime scene could not be matched to either Major or Dell.
            Stermitz's decision to call or not call particular witnesses was tactical, and did not
25          fall below an objective standard fo reasonableness under the circumstances. [fn
            15, *See Doleman,* 112 Nev. At 848, 921 P.2d at 280-81 (quoting *Howard,* 106
26          Nev. at 722, 800 P2d at 180).] We note that, contrary to Major's assertion,
            Stermtiz had the DNA testing report admitted into evidence, and the jury therefore
27          had the report to consider in its deliberations.  We further note that the substance

28                                                      30

1   of Dr. Birkby's report that was beneficial to Major came into the record, as
2   Stermitz cross-examined Dr. Brooks regarding Dr. Birkby's findings and her
    discussions with him.  Thus, the district court did not err in finding that Major
3   was not entitled to relief in this regard.

4   Exhibit 318, pp. 8-9.

5          Federal law requires the court's review to be "highly deferential," adopting counsel's

6   perspective at the time of the challenged conduct, avoiding the effects of hindsight, "indulg[ing] a

7   strong presumption that counsel's conduct falls within the wide range of reasonable professional

8   assistance ... [and] requiring the [petitioner] to overcome the presumption that ... the challenged

9   action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689 (citation omitted).

10  Taking this view, the court finds that petitioner has failed to show that counsel was ineffective in

11  maintaining a consistent defensive strategy or that the Nevada Supreme Court's consideration and

12  decision as to his use of expert witnesses was wrong in light of 28 U.S.C. § 2254(d).

13         *Handling of Evidence*

14         (i)   Defense counsel unreasonably failed to object to the chain of custody of the
               evidence (skeletal remains) even though Dr. Brooks testified that she took the
15             skeletal remains to her home and laid them out on her back patio outside the
               confines of a controlled environment.
16
           (j)   Dr. Birkby's report states that when he examined the bones, the labels (paper
17             numbers taped to the bones) had come loose and many had been mixed up.
               Some bones had more than one label and other bones were not labeled at all.
18

19         Petitioner argues that the handling of the bones, as described above, was inconsistent

20  with established criminal forensic investigation and scientific procedure, rendering the evidence

21  suspect.  Petitioner contends that counsel's failure to attack the foundation of the only evidence that

22  could prove criminal agency was ineffective representation.

23         The admissibility of evidence is a question of state law.  *Lisenba v. California*, 314

24  U.S. at 228; *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983). In Nevada the foundation

25  for the admissibility of evidence can be established either by a chain of custody or through proper

26  identification by an appropriate witness.  *Franko v. State,* 94 Nev. 610, 613, 584 P.2d 678, 679

27  (1978); *see also, Eisentrager v. State,* 79 Nev. 38, 45, 378 P.2d 526, 531 (1963)("The burden is upon

28                                          31

1   the party relying upon expert testimony to prove the identity of the object upon which such testimony

2   is based.")  Because the bones were identified by an appropriate witness, the chain of custody need

3   not be closely adhered to.  Any doubt as to possible tampering or alteration of the evidence properly

4   goes to the weight, not the admissibility of the evidence.  *Id.*.

5          Petitioner argues that the handling of the bones by Dr. Brooks, who took the bones to

6   her home to lay them out and examine them, could have resulted in a finding that the bones were

7   altered or tampered with.  However, considering the fact that the bones lay exposed to all elements in

8   nature for some eighteen months, the issue of removing them from the laboratory and laying them

9   out on a sheet out-of-doors for examination rings hollow.  The bones were identified by both

10  Dr. Brooks and Dr. Birkby and assembled by them based upon their individual characteristics and

11  normal placement in the skeleton.  The party proving the identity of the object of the testimony need

12  not negative all possibility of substitution or tampering.  *Eisentrager,* 79 Nev. At 45; 378 P.2d at

13  531.  Petitioner makes no specific suggestion that the bones were altered or tampered with and the

14  mislabeling or dislodged labels observed by Dr. Birkby do not alter the true nature or identity of the

15  bones.

16         The Nevada Supreme Court considered and rejected this claim finding that the

17  custodian of the evidence, the investigator, accompanied the bones at all times.  Additionally, the

18  court observed that testimony at the evidentiary hearing indicated that any damage done to the bones

19  during Dr. Brooks' examination at her home would have been identifiable as post-mortem changes.

20  The court determined that petitioner had failed to show that an objection by counsel to the handling

21  of the evidence would have resulted in a different outcome at trial.  Exhibit 318, pp. 11-12.  This

22  court agrees.

23         *Collection of Evidence*

24         (k)    Defense counsel unreasonably failed to object to the inferior procedures used
               in the search for and recovery of the skeletal remains.   The investigators
25             failed to do a line search and did not employ cadaver dogs trained to locate
               human remains.
26
           (l)    Defense counsel unreasonably failed to track and find out what happened to
27             the additional bones found after the skeletal remains that were examined were

28                                      32

cremated and to find out if they were tested or examined for any exculpatory evidence. Counsel failed to investigate the "thread" found in one of the bones, did not have it tested to identify its origins.

Petitioner argues that had counsel objected to the methods used to locate the bones and to Dr. Brooks' testimony related to a thread attached to one of the bones, the outcome of the trial would have been different. Pointing to the testimony of Dr. Fulginiti, the expert employed by petitioner to appear at the evidentiary hearing, he suggests that counsel was ineffective for failing to question the origins of the thread - which might have been a root, or for failing to investigate the possibility of exculpatory evidence on bones found after the original bones were examined and cremated. Petitioner argues that leaving the jury to believe the thread was deposited in the bone by means of a the sharp force implement, as testified by Dr. Brooks, without challenging a conclusion the expert was not qualified to reach, caused him significant prejudice.

The Nevada Supreme Court addressed the claim noting counsel's testimony at the evidentiary hearing and agreeing that counsel had made a tactical decision based upon his belief that the fewer pieces of evidence admitted the better for his client. Exhibit 318, p. 15. The court denied relief on this claim and petitioner has not demonstrated how that decision was unreasonable either in application of federal law or in its factual determinations. The court will deny relief on this claim.

*Trial Preparation*

(m)   Defense counsel unreasonably failed to consult with an appropriate expert before trial to make certain he understood the evidence that would be presented regarding the injury to the bones.

Petitioner further argues that had counsel properly prepared for the expert testimony he could have raised effective objections, would have been able to cross-examine the witness more effectively and his closing arguments would have benefitted. To support the claim, petitioner points to counsel's relative inexperience, particularly in the area of forensic anthropology. Moreover, counsel prepared for trial by reading a biography of a criminologist with case studies about medical and legals causes of death. Exhibit 282, pp. 233-234. Instead, petitioner argues counsel should have spent time with an expert ("like Dr. Fulginiti, for example") who could have schooled him in the specifics of forensic anthropology.

33

1        Respondents argue the claim is conclusory.

2        The Nevada Supreme Court noted, in denying the claim, that counsel had conferred

3  with Dr. Birkby several times.  Since Dr. Fulginiti acknowledged that Dr. Birkby was knowledgeable

4  in the field, as she stated he was her mentor  (exhibit 282, pp. 113-114), it seems that consultations

5  with Dr. Birkby would have met petitioner's criteria in this regard. Petitioner has not demonstrated

6  that the state court's decision meets the criteria necessary for this court to grant relief.

7        (n)    This subpart was dismissed as moot.

8        (p)    Defense counsel unreasonably failed to object to the substantial and injurious
              effect of the pattern of prosecutorial misconduct and overreaching which
9             distorted the fact finding process and rendered Major's trial fundamentally
              unfair.  See Ground 12, *infra* at pp. 27-28.
10

11       Petitioner refers to the arguments offered in support of ground twelve, a ground that

12 was procedurally defaulted in state court.  In that ground, petitioner argues that the prosecutor was

13 out to get him as evidenced by the attempts to prosecute the case in Eureka County on the murder

14 charge and the successful prosecution of him on a charge of perjury arising from an affidavit signed

15 by petitioner in his attempts to gain bail while awaiting trial.[9]  The actions complained of in this

16 ground for relief occurred outside the prosecution of this case and, while a motion to disqualify the

17 prosecutor might have been available, it would likely have been unsuccessful, as the prosecutor was

18 the elected district attorney and charged with prosecuting crimes in that county.

19       The Nevada Supreme Court opined that this claim did not merit relief stating:

20       Fourteenth, Major argues the district court erred in rejecting his claim that
         Stermitz was ineffective for failing to object to "prosecutorial misconduct and
21       overreaching."  Major contended Stermitz should have objected that the
         prosecution was engaging in "misconduct and overreaching" by prosecuting him
22       for the third time for the crime.  Both prior prosecutions were dismissed without
         prejudice, and the State was entitled to prosecute Major again.  Major failed to
23       demonstrate how objecting on this ground would have changed the outcome of his
         trial.  The district court did not err in rejecting this claims.
24

25

26       [9] The perjury conviction was ultimately overturned by the Nevada Supreme Court.  However,
    that decision had not issued when petitioner stood trial and was convicted in 1996 in Elko County.
27 Petitioner asserts the perjury conviction prevented him from taking the stand in his own defense.

28                                    34

1   Exhibit 318, pp. 14-15.

2              No relief is warranted on this claim.

3   <u>Ground Eighteen</u>:    Ground eighteen was discussed and rejected previously in this Order.

4   <u>Ground Nineteen</u>:    Petitioner's Conviction and Sentence Are Invalid under the Constitutional
                    Guarantees of Due Process of Law, Equal Protection of the Laws, Effective
5                   Assistance of Counsel and a Reliable Sentence Because Petitioner Was Not
                    Afforded Effective Assistance of Counsel in the First Prosecution for Murder.
6                   U.S. Const. Amends. V, VI, & VIII.

7              Petitioner argues that counsel at the first prosecution was ineffective in failing to

8   obtain a dismissal of the charges with prejudice, allowing petitioner to be brought up on murder

9   charges some six years after the initial dismissal, and also allowing the destruction of the skeletal

10  remains of the victim.

11             Petitioner offers no additional argument in support of the claim, citing no case law to

12  support his proposition.  The Nevada Supreme Court denied the claim finding that petitioner had

13  failed to show how Lockie's performance prejudiced him and presented no facts that would

14  demonstrate he was entitled to have the charges dismissed with prejudice.  This claim was properly

15  considered by the Nevada court and no federal relief is warranted.

16         **III.    Conclusion**

17             The court previously dismissed grounds 16 and 17(n) as moot.  Petitioner abandoned

18  ground 8 as moot.  As to the remaining grounds of the amended petition, petitioner has failed to

19  overcome the procedural bar to grounds 5 and 10-14.  Additionally, he has not demonstrated that the

20  Nevada Supreme Court's consideration and rejection of his remaining grounds for relief was contrary

21  to or based upon an unreasonable application of clearly established federal law as determined by the

22  United States Supreme Court.  Neither has petitioner demonstrated that the state court's decision was

23  an unreasonable determination of the facts in light of the evidence presented.

24  <u>Certificate of Appealability</u>

25             In order to proceed with his appeal, petitioner must receive a certificate of

26  appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski*, 435

27  F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir.

28                                    35

1    2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional

2    right" to warrant a certificate of appealability. Id.; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529

3    U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the

4    district court's assessment of the constitutional claims debatable or wrong."  Id. (quoting Slack, 529

5    U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating

6    that the issues are debatable among jurists of reason; that a court could resolve the issues differently;

7    or that the questions are adequate to deserve encouragement to proceed further.  Id.

8              Pursuant to the December 1, 2009, amendment to Rule 11 of the Rules Governing

9    Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in

10   the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a

11   notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

12   considered the issues raised by petitioner, with respect to whether they satisfy the standard for

13   issuance of a certificate of appealability, and determines that grounds 17(g) and 17(m) meet that

14   standard.  The Court will therefore grant the certificate of appealability as to grounds 17(g) and

15   17(m) and deny petitioner a certificate of appealability as to the remaining grounds for relief.

16            **IT IS THEREFORE ORDERED** that grounds 5, 10, 11, 12, 13, 14 of the Amended

17   Petition are **DISMISSED WITH PREJUDICE** and grounds 1-4, 6-9, 15, 17(a)-(m), 17(o-(r), 18

18   and 19 are **DENIED.**

19            **IT IS FURTHER ORDERED** that petitioner is **GRANTED** a Certificate of

20   Appealability as to grounds 17(g) and (m).

21        DATED this 17th day of March, 2010.

22

23                                                    _____
                                                     LARRY R. HICKS
24                                                   UNITED STATES DISTRICT JUDGE

25

26

27

28                                          36